# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01345-COA

**JOE CLYDE TUBWELL**                                                **APPELLANT**

**v.**

**FV-1, INC., IN TRUST FOR MORGAN STANLEY**          **APPELLEES**
**MORTGAGE CAPITAL HOLDINGS, LLC,**
**MORGAN STANLEY MORTGAGE CAPITAL**
**HOLDINGS, LLC AND SPECIALIZED LOAN**
**SERVICING, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2021 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOE CLYDE TUBWELL (PRO SE) |
| ATTORNEY FOR APPELLEES: | JOHN THOMAS ROUSE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 08/08/2023 |
| MOTION FOR REHEARING FILED: | |

       **EN BANC.**

       **SMITH, J., FOR THE COURT:**

¶1.     Joe Clyde Tubwell takes issue with the DeSoto County Circuit Court's ruling effectively dispossessing him of property located in DeSoto County. The underlying action was initiated to enforce the terms of a settlement agreement after the property Tubwell resided on was foreclosed. Under the terms of the settlement agreement, Tubwell agreed to vacate the property by a certain date, but Tubwell refused to comply and did not surrender possession. The circuit court found that Tubwell was wrongfully withholding possession of the property after his right to possession had terminated, and pursuant to the summary remedies for unlawful detainer claims, the court ordered Tubwell to immediately surrender

possession. Tubwell claims the court erred by exercising jurisdiction over this action, by granting summary judgment in favor of the Plaintiffs, and by adjudicating the Plaintiffs' claims without considering the merits of his counterclaims. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Tubwell had been living in a house located on Ashbrook Drive in DeSoto County, Mississippi, since 2005. In 2016, the mortgage loan on the house went into default, and foreclosure proceedings were initiated. Tubwell filed a complaint against the mortgage companies in the DeSoto County Circuit Court in December 2016, attempting to stop the pending foreclosure. Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley") and Specialized Loan Servicing LLC ("SLS") were among the parties named as defendants. Morgan Stanley and SLS successfully removed Tubwell's action to a federal district court and proceeded to file a motion for summary judgment. In March 2019, the federal court granted summary judgment and entered a final judgment denying Tubwell's claims and closing the case. Tubwell subsequently filed several post-judgment motions in April 2019, including a motion for reconsideration of his claims. Before the federal court had a chance to rule on any of the post-judgment motions, however, Tubwell, Morgan Stanley, and SLS entered settlement negotiations.

¶3.     On February 5, 2020, the parties reached an agreement to settle Tubwell's federal court litigation. Morgan Stanley and SLS agreed to pay Tubwell a confidential sum of money, and in exchange, Tubwell agreed to waive his objection to foreclosure and agreed

to vacate the subject property by April 30, 2020. A non-judicial foreclosure sale was held on February 6, 2020, and the property was sold to FV-1, Inc., in trust for Morgan Stanley Mortgage Capital Holdings LLC ("FV-1"), as subsequently recorded in the DeSoto County land records on February 18, 2020. A Confidential Settlement Agreement and Release document ("CSA") was signed by Tubwell on February 12, 2020, and by Morgan Stanley and SLS on February 13, 2020. Thereafter, on February 21, 2020, Morgan Stanley and SLS tendered the monetary portion of the settlement to Tubwell.

¶4.    Also on February 21, 2020, the parties filed a notice of tentative settlement with the federal court, notifying the court that a tentative settlement of the federal litigation had been reached and requesting ninety days to consummate the settlement agreement. Based on the notice of settlement, the federal court granted the parties ninety days to consummate the settlement and dismissed Tubwell's motion for reconsideration of summary judgment without prejudice.

¶5.    Subsequent emails among Tubwell, Morgan Stanley, and SLS show that due to the COVID-19 pandemic, the parties agreed to multiple extensions of the deadline to vacate, and the final agreed-upon date for Tubwell to move out was March 31, 2021. Each time the deadline to vacate was pushed back, the parties filed a motion with the federal court to extend the period to consummate the settlement agreement.

¶6.    On February 23, 2021, Tubwell filed a notice of non-confirmation of the settlement agreement in the federal court, claiming that Morgan Stanley and SLS had breached the CSA

3

by divulging its terms to an adverse outside party. Tubwell requested the federal court to renew his motion for reconsideration of the grant of summary judgment and his original claims. In response, on March 9, 2021, Morgan Stanley and SLS filed a notice of intent to enforce the settlement against Tubwell. They argued that Tubwell was required to return the settlement funds if he wanted to negate the settlement agreement. Tubwell refused to vacate the property by the March 31, 2021 deadline and made no attempt to return the settlement funds previously tendered by Morgan Stanley and SLS. On April 1, 2021, Morgan Stanley and SLS filed a motion in federal court requesting that the court reopen the case and enforce the terms of the CSA requiring Tubwell to vacate and surrender possession of the property immediately. The federal court entered an order on August 12, 2021, and found that it had no jurisdiction to rule on the issue of enforcing the settlement agreement as part of the federal litigation, but the court held that Morgan Stanley and SLS were allowed to file a separate action for enforcement.

¶7.     On August 23, 2021, Morgan Stanley and SLS sent Tubwell a letter containing a notice to vacate. The letter notified Tubwell that the subject property had been foreclosed upon, that FV-1 was the new owner, and that any and all rights to occupancy Tubwell had were terminated pursuant to the CSA and substitute trustee deed. The notice instructed Tubwell to vacate within seven days, or a lawsuit would be filed against him for possession of the property.

¶8.     After Tubwell's continued refusal to vacate, and based on the federal court's

4

instructions, Morgan Stanley, SLS, and FV-1 ("Plaintiffs") filed a complaint against Tubwell in the DeSoto County Circuit Court on September 10, 2021. Plaintiffs initiated the underlying action to enforce the terms of a settlement agreement against Tubwell and specifically requested that the circuit court order Tubwell to surrender the property because he no longer had a right to possession.

¶9. On October 6, 2021, Plaintiffs filed their motion for leave to file documents under seal, seeking to have the CSA and confidential records sealed. That same day, Tubwell filed his response to the motion to file documents under seal. The circuit court ultimately granted Plaintiffs' motion to file the CSA and confidential records under seal.

¶10. Tubwell filed his answer on October 8, 2021, challenging the court's jurisdiction to rule on the complaint and denying that a "valid or enforceable agreement conveying such property over to plaintiffs Stanley and SLS" existed. In his answer, he asserted requests for a dismissal of Plaintiffs' entire complaint, arguing that their claims were barred by waiver, estoppel, and a statute of limitations. Tubwell also included various counterclaims in his answer and later filed a motion for leave to invoke discovery.

¶11. On October 14, 2021, Plaintiffs filed their response in opposition to Tubwell's motion to dismiss, which specifically addressed the requests for dismissal included in Tubwell's answer. Less than a week later, Plaintiffs further moved to dismiss Tubwell's counterclaims on the grounds that counterclaims were not allowed in summary or possessory actions, and the issues he raised were barred by res judicata because of the federal court judgment. On

October 26, 2021, Plaintiffs filed a notice of hearing, setting a hearing for November 18, 2021, on their complaint to enforce the settlement agreement, a motion to dismiss Tubwell's counterclaims, and memorandum in support. Prior to the hearing, Tubwell filed his response to Plaintiffs' motion to dismiss his counterclaims and requested that the court deny Plaintiffs' motion and allow his counterclaims to proceed. Plaintiffs filed their rebuttal in support of the motion to dismiss Tubwell's counterclaims on October 29, 2021.

¶12.    Also on October 29, 2021, Plaintiffs filed a motion for summary judgment on their complaint for possession, their memorandum in support of the summary judgment motion, and their statement of undisputed facts. Plaintiffs claimed that no genuine issue of any material facts existed as to the right of possession and that FV-1 was entitled to possession as a matter of law. In the Plaintiffs' memorandum attached in support of their motion for summary judgment, Plaintiffs claim that FV-1 is the record owner of the subject property pursuant to the substitute trustee deed and that the CSA compels possession in FV-1. Plaintiffs present two bases to show they had the legal right of possession for the subject property that could not be disputed. First, Plaintiffs claim that FV-1 was entitled to possession because FV-1 was the record owner of the subject property and held proper title pursuant to the substitute trustee deed. Plaintiffs contend that after the property was sold upon foreclosure, Tubwell lost all possessory interest.

¶13.    Second, Plaintiffs claim that the parties entered into a valid and enforceable CSA, which provided that FV-1 agreed to tender a sum of money to Tubwell for settlement, and

6

in exchange, Tubwell agreed to vacate the subject property. The terms of the CSA also included a specific agreed-upon deadline for Tubwell to vacate, but Plaintiffs stipulated that the parties had agreed by email to extend the deadline to March 31, 2021, to allow Tubwell more time to vacate. Plaintiffs indicated that Tubwell had been granted a temporary right of possession until March 31, 2021, after which any claim to possession expired. Additionally, Plaintiffs claimed that there was no evidence Tubwell could point to that placed FV-1's legal right to possession in dispute. On November 1, 2021, Plaintiffs filed a notice of hearing on their motion for summary judgment, memorandum in support of the motion, and statement of undisputed facts for November 18, 2021. Further, Rule 81 summonses, M.R.C.P. 81, were issued on Tubwell for the hearing as to Plaintiffs' complaint to enforce the settlement agreement, motion to dismiss counterclaims, and motion for summary judgment.

¶14. On November 5, 2021, after Plaintiffs moved for summary judgment but before Tubwell filed a response to the summary judgment, Tubwell filed a motion to dismiss Plaintiffs' complaint due to the expiration of the statute of limitations and adverse possession. That same day, Tubwell also filed a motion to quash and void process of unauthorized summonses and to impose monetary sanctions and a motion to unseal confidential records.

¶15. Tubwell subsequently filed his response to Plaintiffs' motion for summary judgment and his affidavit on November 12, 2021. He opposed summary judgment on the grounds that (1) Plaintiffs failed to provide supporting affidavits or sworn documents required by

Mississippi Rule of Civil Procedure 56(c), (2) his affidavit demonstrated that there were genuine issues of material facts in dispute, and (3) Plaintiffs' complaint for enforcement of the CSA was barred by res judicata. Tubwell supported his responsive motion with his own affidavit, which included multiple assertions, including that: (a) the federal court case was not resolved, (b) Plaintiffs forfeited any funds they tendered to Tubwell toward settlement, (3) Plaintiffs failed to demonstrate that they did not breach or violate the CSA, (4) he maintained a right to possession after March 31, 2021, as the proceedings in this case continue, and (5) the federal court already ruled on the issue of enforcement of the CSA.

¶16.     Plaintiffs filed a response to Tubwell's motion to quash and void process and their memorandum in rebuttal to his summary judgment response on November 15, 2021. In their rebuttal, they contended that none of Tubwell's arguments prevented the requested relief of summary judgment on the issue of the right to immediate possession. Plaintiffs argued that the facts of ownership and right to possession could not reasonably be disputed in light of the notarized CSA and certified substitute trustee deed. Moreover, Plaintiffs claimed Tubwell's affidavit did not set forth any facts contrary to FV-1's ownership of the subject property or Tubwell's agreement to vacate.

¶17.     The circuit court entered six separate orders ruling on each of the motions filed by Plaintiffs and by Tubwell. On November 30, 2021, the circuit court (1) denied Tubwell's motion to quash and void process, finding that service of process was perfected in accordance with Mississippi Rule of Civil Procedure 4; (2) denied Tubwell's motion to strike

8

the notice of hearing, finding that the hearing notice was in accordance with "Miss. Code Ann. 11-25-101 et seq." providing for summary proceedings in cases of unlawful detainer; (3) denied Tubwell's motion to unseal certain records finding that the records referenced were accessible to Tubwell and subject to a confidentiality agreement; and (4) denied Tubwell's motion for leave to invoke discovery finding that discovery was not allowed pursuant to summary proceedings under "Miss. Code Ann. Section 11-25-101 et seq." and that there was no good cause to warrant further inquiry into the right of possession. The circuit court also entered an order on November 30, 2021, denying Tubwell's motion to dismiss Plaintiffs' complaint upon finding that the complaint was timely filed under Mississippi Code Annotated 11-25-101, which requires unlawful detainer claims to be brought within one year of the alleged withholding of possession, and that adverse possession did not begin until the day after Tubwell's permission to possess expired on March 31, 2021.

¶18.    Then on December 1, 2021, the court entered an order granting summary judgment of possession and dismissing Tubwell's counterclaims. As to the summary judgment motion, the court found that Plaintiffs had the right to possession of the subject property and that Plaintiffs had given Tubwell permission to possess the property until March 31, 2021. The court determined it was indisputable that Tubwell remained in possession after the permission from Plaintiffs was terminated, and it was indisputable that Tubwell was depriving FV-1 of the rightful and lawful possession of the subject property. Consequently, the court held that Plaintiffs were entitled to immediate possession as a matter of law and

9

granted summary judgment ordering Tubwell to relinquish possession to Plaintiffs.

¶19. In its summary judgment order, the court also simultaneously granted Plaintiffs' motion to dismiss Tubwell's counterclaims. In sum, the circuit court concluded that no triable issues remained on FV-1's claim for possession and entered a judgment requiring Tubwell to vacate the property and relinquish possession to FV-1, thereby enforcing the CSA against Tubwell.

¶20. Aggrieved, Tubwell appeals all six of the circuit court's orders in this case. Tubwell filed his notice of appeal and designation of the record on December 6, 2021. Plaintiffs then filed their designation of the record on December 8, 2021, which designated a substantially greater portion of the evidentiary record for appeal than Tubwell. In turn, Tubwell filed a motion to require Plaintiffs to pay the costs for the appellate record designated by Plaintiffs, to which Plaintiffs filed a response in opposition. The circuit court denied Tubwell's request to have Plaintiffs pay the cost of the designated appellate record.

¶21. Tubwell also filed an unsuccessful application for a stay of the circuit court's judgment and order to vacate for the duration of the appeal. The circuit court entered an order setting a surety bond for Tubwell's request to stay the order to vacate the home in an amount of $140,000 on December 10, 2021. Tubwell then filed a motion in this appeal to set aside and reduce the surety bond and for a stay of judgment pending appeal on December 17, 2021. This Court dismissed Tubwell's motion on January 26, 2022.

¶22. Subsequently, Tubwell filed a motion in the circuit court to set aside and reduce the

surety bond and for a stay of judgment pending appeal on January 31, 2022. The circuit court entered its order denying Tubwell's motion for a bond reduction on February 8, 2022. On March 3, 2022, Tubwell filed his application in this appeal seeking relief from the appeal bond set and reviewed by the circuit court. This Court denied Tubwell's application on April 13, 2022. No bond was paid by Tubwell, and the DeSoto County Circuit Court entered a writ of *habere facias possessionem* (i.e., ordering that FV-1 be caused to have possession) on May 5, 2022. The DeSoto County Sheriff served the writ on Tubwell on June 6, 2022, and set the eviction for June 23, 2022. Tubwell and the occupants vacated the property before the sheriff's eviction.

## STANDARD OF REVIEW

¶23.    "This Court uses a de novo standard when reviewing questions concerning jurisdiction." *Harrison v. Howard*, 356 So. 3d 1232, 1241 (¶22) (Miss. Ct. App. 2023). On appeal from an order granting or denying "a motion to dismiss, this Court's standard of review is de novo." *Dobbs v. City of Columbus*, 285 So. 3d 1219, 1222 (¶7) (Miss. Ct. App. 2019). We also review the circuit court's "grant or denial of a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Jones v. Alcorn State Univ.*, 337 So. 3d 1062, 1071 (¶35) (Miss. 2022).

## DISCUSSION

¶24.    Tubwell asserts the following nine issues on appeal: (1) whether the circuit court exercised proper jurisdiction over Plaintiffs' action; (2) whether the circuit court erred by

11

denying Tubwell's motion to dismiss Plaintiff's complaint; (3) whether the circuit court erred by granting summary judgment in favor of Plaintiffs on the right to immediate possession; (4) whether the circuit court erred by summarily dismissing Tubwell's counterclaims; (5) whether the circuit court erred by denying Tubwell's motion to quash and void process of summons; (6) whether the circuit court erred by denying Tubwell's motion to unseal confidential agreement records; (7) whether the circuit court erred by denying Tubwell's motion for leave to invoke discovery; (8) whether an unpaid surety bond can be applied to Tubwell's damages requested on appeal; and (9) whether the circuit court erred by denying Tubwell's motion to require Plaintiffs' to pay the costs for the appellate record designations.

¶25. Tubwell's appeal essentially takes issue with the fact that the circuit court allowed Plaintiffs to take the property from Tubwell by requiring him to surrender immediate possession to FV-1. Each of Tubwell's arguments appears to request reversal of the judgments of the circuit court and, instead, an award of all rights and interest in the property to him.

¶26. Although Tubwell claims there is reversible error with each of the circuit court's orders, we find the issues that are determinative of the outcome in this case are the circuit court's jurisdiction, the denial of his motion to dismiss the complaint, the grant of summary judgment in favor of Plaintiffs, and the dismissal of his counterclaims without prejudice.

**I.      Whether the circuit court had jurisdiction over Plaintiffs' complaint.**

¶27. First and foremost, Tubwell argues that it was error for the Desoto County Circuit

Court to rule on Plaintiffs' action because the circuit court "was without jurisdiction to hear or decide any ejectment issue, summary judgment issue or any other matter." He claims that Plaintiffs had previously removed the case to federal court, which terminated the circuit court's jurisdiction. According to Tubwell, the litigation in federal court was not final and had not been remanded, and as such, the federal court continued to have jurisdiction over Plaintiffs' action, precluding the circuit court from having jurisdiction.

¶28.    Contrary to Tubwell's assertion, when looking at the federal court's judgment directly, the federal court specifically explained that a final judgment was entered and that the federal court litigation had terminated. The federal court found that "Tubwell appears not to challenge the existence of the settlement agreement to the extent he takes the position that it has been breached by the defendants." But the judgment explicitly stated that the federal court did not have jurisdiction to consider the merits of any motion to enforce the settlement agreement. Instead, "[u]nder these circumstances, the Court deem[ed] it prudent and in the interest of judicial efficiency to . . . provide [Plaintiffs] thirty days to file a separate enforcement action" and dismissed the motion without reaching the merits. Therefore, the federal court's jurisdiction had terminated, and nothing remained for the federal court to remand. We find that it was proper for the DeSoto County Circuit Court to exercise jurisdiction over Plaintiffs' complaint to enforce the CSA for possession from Tubwell.

¶29.    Having found jurisdiction was proper, we proceed with addressing the other issues Tubwell raises on appeal.

13

**II.** **Whether the circuit court erred by denying Tubwell's motion to dismiss Plaintiffs' complaint.**

¶30. Tubwell's appeal makes a generic claim that the circuit court erred in failing to grant his requested relief of dismissal of Plaintiffs' entire complaint. He argues that the court should not have permitted Plaintiffs to pursue their claim because Mississippi Code Annotated section 15-1-23 (Rev. 2019) delineates a one-year limitations period that he alleges is applicable and restricts Plaintiffs' ability to pursue any issue of collection upon the foreclosed property. Alternatively, he claims that the circuit court should not have allowed Plaintiffs' claim to proceed because he acquired ownership of the property by adverse possession. We find that it was not error for the circuit court to deny Tubwell's motion to dismiss Plaintiffs' complaint.

**A.** **Statute of Limitations under Section 15-1-23**

¶31. Tubwell's first argument for dismissal is based on the application of a specific statute of limitations (section 15-1-23). According to Tubwell, section 15-1-23 applies to any claims dealing with foreclosed properties. He contends that the statutory one-year period had expired by the time of Plaintiffs' complaint and that the substitute trustee deed and any agreement securing the deed had been extinguished along with the right to pursue remedies. "[T]he application of a statute of limitations is a question of law[,]" which we review de novo. *GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464, 466 (¶5) (Miss. 2021) (quoting *Lyas v. Forrest Gen. Hosp.*, 177 So. 3d 412, 416 (¶18) (Miss. 2015)). Mississippi Code Annotated section 15-1-23 states,

14

> In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes.

The statute Tubwell attempts to invoke "is a one-year statute of limitations for suits on *installment notes* following foreclosure or sale of the property." Kenneth D. Farmer, *Deficiency, in* 6 Encyclopedia of Mississippi Law § 51:60 (Jeffrey Jackson et al. eds., 2d ed. updated Oct. 2022) (emphasis added). Our supreme court in *Rankin County Bank v. McKinion*, 531 So. 2d 822 (Miss. 1988), held that section 15-1-23 "is applicable *only* to a suit on a note secured by [a] mortgage which has been foreclosed[,]" otherwise known as a deficiency judgment, where the "action [is] for the balance due under the note[.]" *Id.* at 824 (emphasis added). As such, it applies if a claimant was "entitled to a deficiency judgment from the debtor for the balance due on an indebtedness[.]" *OMP v. Sec. Pac. Bus. Fin. Inc.*, 716 F. Supp. 251, 258 (N.D. Miss. 1989). Here, Plaintiffs' claim does not seek to recover money from Tubwell for a balance due on any installment notes or mortgage indebtedness, and the claim is not an action for a deficiency judgment. Thus, the one-year statute of limitations under section 15-1-23 does not apply, and the circuit court properly denied relief on this ground.

## B.  Adverse Possession

¶32.   Next, Tubwell raises a claim for relief on adverse possession grounds pursuant to Mississippi Code Annotated section 15-1-13 (Rev. 2019). He implies that he acquired

15

ownership of the subject property through adverse possession based on the fact that he lived in the house for over ten years and the documents in the record show that his name was never on the loan or mortgage note. "In order to establish a claim of adverse possession, the party claiming to have adversely possessed the property must show, by clear-and-convincing evidence, that his possession was (1) under a claim of right or ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Greenwood v. Young*, 80 So. 3d 140, 147 (¶19) (Miss. Ct. App. 2012). Tubwell did not offer evidence to show that his possession was actual or hostile; open, notorious, and visible; exclusive; and peaceful. Because he did not establish each of the six elements required, Tubwell's argument fails and his claim of adverse possession was properly denied.

¶33. Ultimately, we find that the circuit court did not err when it denied Tubwell's motion to dismiss Plaintiffs' complaint.

### III. Whether the circuit court erred when it granted summary judgment in favor of Plaintiffs.

¶34. Tubwell makes a generic claim that the "[circuit] court erred in granting Plaintiffs unsupport[ed] motion for summary judgment." He argues it was error to grant summary judgment because no sufficient evidentiary documents supported the motion and because the record showed there were genuine issues of material facts in dispute.

### A. Plaintiffs' Supporting Documents

¶35. Tubwell first contends that summary judgment should not have been granted because

16

Plaintiffs "moved for Summary judgment without affidavits or other sworn documents," which he claims are "required by MR[C]P 56(c)." He alleges that Plaintiffs "attempted to use unverified email copies" that were "inadmissible as being protected conversation under the electronic communication act," as well as records that were not certified.

¶36.    Summary judgment proceedings are governed by Mississippi Rule of Civil Procedure 56(a) which states,

> A party seeking to recover upon a claim, . . . may, at any time after the expiration of thirty days from the commencement of the action . . . move *with or without* supporting affidavits for a summary judgment in his favor upon all or any part thereof.

(Emphasis added).[1]

¶37.    Accordingly, the specific wording of "Rule 56[a] allows summary-judgment motions to be considered 'with or without supporting affidavits[.]'" *Williams v. City of Batesville*, 313 So. 3d 479, 492 (¶71) (Miss. 2021) (Griffis, J., concurring in part and in result). Therefore, "[a] party need not file affidavits in support of or in opposition to a summary judgment." Jeffrey Jackson et al., *Affidavits*, *in* 2 Encyclopedia of Mississippi Law § 13:180 (3d ed. updated Oct. 2022). Courts have noted, however, that "Rule 56(c) and (d) clearly require the

---

[1] "A motion for summary judgment challenges the sufficiency of an adversary's claim or defense by presenting matters outside the pleadings to prove the absence of a triable issue of fact." 1 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 16:21 (updated May 2023); *see also Stuckey v. The Provident Bank*, 912 So. 2d 859, 864-65 (¶10) (Miss. 2005) ("Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried.") (citing M.R.C.P. 56 cmt.).

17

movant to offer *credible documents and evidence* to support the facts presented." *E.g.,* *Williams*, 313 So. 3d at 492 (¶71) (Griffis, J., concurring in part and in result) (emphasis added).

¶38.    The record in this case reveals that Plaintiffs provided the signed and notarized CSA and a certified copy of the substitute trustee deed in support of summary judgment. While Plaintiffs' motion was absent of sworn affidavits, the language of Rule 56 does not make affidavits mandatory for summary judgment motions.  Both the CSA and the substitute trustee deed are credible, sworn documents that present probative evidence to support the facts presented as to Plaintiffs' right of possession of the property. Pursuant to the language of Rule 56, we cannot find that Plaintiffs' documents were insufficient to support the motion for summary judgment.

### B.    Genuine Issues of Material Fact

¶39.    Second, Tubwell argues summary judgment was not proper because he "presented [his own] affidavit to show [that] there was genuine issues and material facts in dispute which prohibited summary judgment." In particular, Tubwell contends that there are genuine issues in dispute pertaining to Plaintiffs' alleged breach of the CSA and the validity of FV-1's deed of trust.

¶40.    Rule "56 provides for summary disposition in cases where no genuine factual dispute between the parties exists." *Allen v. Mayer*, 587 So. 2d 255, 258 (Miss. 1991). "Summary judgment is appropriate and 'shall be rendered' if the 'pleadings, depositions, answers to

18

interrogatories and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law.'" *Jones*, 337 So. 3d at 1071 (¶35) (quoting M.R.C.P. 56(c)). "[T]his Court

must employ a factual review tantamount to that of the trial court when considering

evidentiary matters in the record." *Stuckey*, 912 So. 2d at 864 (¶8).[2]

¶41.    "The summary judgment movant has a burden of persuasion; a burden to establish that

there is no genuine issue of material fact to be tried." *Id.* at 866 (¶11) (quoting *Shaw v.

Burchfield*, 481 So. 2d 247, 252 (Miss.1985)). Essentially, by filing a motion for summary

judgment, "the moving party takes the position that he is entitled to prevail as a matter of law

because his opponent has no valid . . . defense to the action[.]" *Brown v. Credit Ctr. Inc.*, 444

So. 2d 358, 362 (Miss. 1983). In turn, "[t]he party opposing the motion must rebut . . . by

bringing forth probative evidence legally sufficient to make apparent the existence of triable

fact issues." *Stuckey*, 912 So. 2d at 866 (¶11) (quoting *Shaw*, 481 So. 2d at 252). The

"adverse party may not rest upon the mere allegations or denials of his pleadings, his

response must set forth specific facts showing that there is a genuine issue for trial." *Id.* at

864 (¶8); *accord Brown*, 444 So. 2d at 364 ("Mere general allegations which do not reveal

---

[2] "[J]ust like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *Hill v. Cent. Sunbelt Fed. Credit Union*, 349 So. 3d 1181, 1184 (¶4) (Miss. Ct. App. 2022) (quoting *McKinley v. Lamar Bank*, 919 So. 2d 918, 925 (¶13) (Miss. 2005)). Additionally, the evidence must be "viewed in the light most favorable to the party opposing the motion." *Daniels v. Fam. Dollar Stores of Miss. Inc.*, 351 So. 3d 964, 969 (¶16) (Miss. Ct. App. 2022).

detailed and precise facts will not prevent the award of summary judgment.").

¶42. We note, however, that "[t]he presence of fact issues in the record does not per se entitle a party to avoid summary judgment"; rather, this "[C]ourt must be convinced that the factual issue is a *material* one, one that matters in an outcome determinative sense." *Charlot v. Henry*, 45 So. 3d 1237, 1246-47 (¶31) (Miss. Ct. App. 2010) (emphasis added). "The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Id*. at 1247 (¶31). "What facts are material is a function of the applicable substantive law determined by reference to the claims and defenses asserted in the pleadings." *Sherrod v. U.S. Fid. & Guar. Co.*, 518 So. 2d 640, 643 (Miss. 1987).

¶43. Thus, before we can determine whether summary judgment was appropriate, we must discuss the applicable substantive law and essential elements of Plaintiffs' claim. Plaintiffs filed their action for possession of the subject property. "Possession actions are legal proceedings that include ejectment and unlawful entry and detainer." Gee Ogletree, *Ejectment*, *in* 7 Encyclopedia of Mississippi Law § 60:115 (Jeffrey Jackson et al. eds., 2d ed. updated Oct. 2022).

¶44. Here, Plaintiffs claimed that they gave Tubwell the right to maintain possession of the property by the terms of the CSA but that his right was temporary and had an expiration date. The complaint asserted that Tubwell was "denying FV-1's right to possess the subject property" after his right had expired and "willfully refuses to deliver possession of the

20

subject property" to Plaintiffs. Plaintiffs' motion for summary judgment then alleged that "Tubwell and the occupants will not confess the plaintiffs right to possess the subject property and vacate as agreed. . . . The move out date was extended four times by agreement, but that date has now expired." The record indicates that Plaintiffs' complaint was an action against Tubwell for withholding the property from Plaintiffs after his right to possession under the CSA had expired.

¶45. The question for our review is whether Plaintiffs, as the movants, established that there was no genuine dispute of material fact as to the issue of Tubwell withholding possession of the property from Plaintiffs after his right to possession expired.

¶46. The CSA provided by Plaintiffs shows that Tubwell signed and entered into an agreement with Plaintiffs pertaining to the subject property, Tubwell agreed to vacate the property, and Plaintiffs agreed to give Tubwell until April 30, 2020, to surrender possession.[3] The emails exchanged between the parties that were presented by Plaintiffs also show that Plaintiffs agreed to extend Tubwell's deadline to vacate to March 31, 2021, and allowed Tubwell to have more time before he was required to surrender possession to Plaintiffs. Thus, Plaintiffs established that Tubwell had a temporary or limited right to possession of the property by contractual agreement and that his right of possession expired no later than

---

[3] Additionally, the CSA includes a term that shows Tubwell agreed to release any claim of possession of the property against SLS, Morgan Stanley, FV-1, or other plaintiffs. Thus, the CSA established that Tubwell did not have any right to possession outside of the period specifically allotted by Plaintiffs.

21

March 31, 2021. The evidence in the record undeniably shows that by Tubwell's own admission, he did not vacate the property and surrender possession to Plaintiffs by March 31, 2021.[4] Rather, the record demonstrates that a notice to vacate was sent to Tubwell after the deadline expired and the notice explicitly stated that his right of possession was terminated, but Tubwell refused to release possession to Plaintiffs.

¶47. To overcome the motion for summary judgment on the issue of the right to immediate possession, Tubwell had to show that a *material* fact for the right of immediate possession was in dispute. Tubwell's responsive motion and sworn affidavit included a multitude of statements; however, he did not present specific facts to dispute that his right of possession stemmed from the CSA and terminated upon expiration of the deadline to vacate. Furthermore, his arguments based on the existence of genuine disputes were "[m]ere general allegations which do not reveal detailed and precise facts [that] will not prevent the award of summary judgment." *Brown*, 444 So. 2d at 364. He did not offer facts specifically demonstrating how Plaintiffs allegedly breached the CSA or why "[P]laintiffs['] position that defendants have no right to possession of his home after March 31, 2021" is disputed.

¶48. We find that Plaintiffs sufficiently established that there was no genuine dispute of material fact as to the issue of Tubwell's failure to vacate the property and that Plaintiffs were entitled to judgment as a matter of law.

---

[4] Instead of vacating on time as agreed, Tubwell filed a notice of non-confirmation of the settlement agreement in federal court on February 23, 2021, claiming SLS and Stanley had breached the CSA by divulging its terms to an adverse third party.

## IV. Counterclaims

¶49.    As part of the ruling granting summary judgment, the circuit court also dismissed without prejudice various counterclaims for damages presented by Tubwell. In so holding, the circuit court noted the "summary" nature of the proceedings and that the sole issue before the court was the right of possession. The circuit court found that it was without jurisdiction to hear the counterclaims. Although the circuit court's order described this matter as an unlawful entry and detainer action, which was improper, we find no error in the decision not to entertain the counterclaims within the confines of this limited proceeding for possession of the property.[5]

¶50.    Here, the subject matter of FV-1's complaint was the enforcement of the CSA. More specifically, the matter at the root of FV-1's claim is that "Tubwell willfully refuses to deliver possession of the Subject Property despite his Settlement Agreement to do so" and that Plaintiffs "desire[d] to obtain possession of the Subject Property[.]" In contrast, Tubwell's counterclaims seek damages for "illegal and deceitful mortgage practices" and "discrimination against the elderly and impoverished," among other claims.

¶51.    In a recent case affirming the dismissal of counterclaims in a similar action, this Court held, "Our supreme court has stated, 'Replevin is a possessory action only, the gist of which

---

[5] "When considering a motion to dismiss, this Court applies a de novo standard of review." *Health Care Med. Inc. v. Good*, 159 So. 3d 583, 585 (¶7) (Miss. Ct. App. 2014). Additionally, "[i]n Mississippi, it is well-settled law that appellate courts may affirm a decision by the circuit court on different grounds than those offered by the circuit court." *Bradford v. State*, 116 So. 3d 164, 165-66 (¶9) (Miss. Ct. App. 2012).

is the right of possession in the plaintiff.'" *Wilson v. City of Greenville*, 359 So. 3d 648, 658 (¶32) (Miss. Ct. App. 2022) (quoting *Ferris v. Hawkins*, 418 So. 2d 811, 814 (Miss. 1982)). In so holding, this Court ruled that the defendant's counterclaim "fell outside the limited purview of a replevin statute. We decline to apply the procedural rules on compulsory counterclaims to the statutory provision of replevin in this case. *See* M.R.C.P. 13(a)(1). The circuit court correctly held that it would be improper to entertain the counterclaim[s]." *Id.*[6]

¶52.    We agree with the separate opinion that under *Hudson v. Bank of Edwards*, 495 So. 2d 1349 (Miss. 1986), a defendant may be allowed to maintain appropriate counterclaims in an ejectment action. However, those counterclaims must properly arise out of the possessory action that is born of an ejectment proceeding. As noted by the separate opinion, "[t]he allegations of Tubwell's counterclaims are vague and conclusory." *Post* at ¶70. As such, we do not read *Hudson* so expansively to state that *all* counterclaims are allowed to proceed

---

[6] The separate opinion highlights the recent case of *Gordon v. Dickerson*, No. 2020-CT-00601-SCT, 2022 WL 4543845 (Miss. Sept. 29, 2022), *reh'g denied* (Miss. Dec. 1, 2022), in support of its position that Tubwell's counterclaims should be allowed to move forward. In *Gordon*, the supreme court "decline[d] to say whether [appellant's] claims for relief constitute[d] either compulsory or permissive counterclaims" on account of the court's finding that the procedure for asserting counterclaims was not properly followed (dealing with an appeal from a justice court order) and the appellant's counterclaims' "filing had no legal effect." *Id*. at *6-7 (¶¶25, 30). As the separate opinion notes, the supreme court did not specifically rule on whether counterclaims were permitted in eviction proceedings where the proper procedure under the Mississippi Rules of Civil Procedure is followed. Therefore, the controversy in the instant case is distinguishable from the issue in *Gordon*. The procedural posture of the counterclaims asserted by Tubwell is not at issue. Rather, the dispute in this case is whether the nature of Tubwell's alleged counterclaims was properly left without adjudication.

24

within a specifically filed cause of action regardless of whether they fall within the requirements of Rule 13 of the Mississippi Rules of Civil Procedure.[7] Therefore, after reviewing the record and relevant caselaw, we find no error in the circuit court's decision not to entertain Tubwell's counterclaims for damages within the confines of this limited proceeding for possession.

## CONCLUSION

¶53. Jurisdiction was proper in the circuit court, and the record contains sufficient evidence to support the circuit court's order denying the motion to dismiss Plaintiffs' complaint, granting summary judgment in favor of Plaintiffs, and dismissing Tubwell's counterclaims for damages without prejudice. We therefore decline to address the remaining issues Tubwell raises. The provisions of the CSA terminated Tubwell's limited right to possession no later than March 31, 2021, at which point the right to immediate possession transferred to FV-1.

---

[7] "Compulsory counterclaims are so closely related to the claims already raised, that they can be adjudicated in the same action without creating confusion and should be adjudicated in the same action so as to avoid unnecessary expense and duplicative litigation." M.R.C.P. 13 advisory committee notes. But if the "counterclaim is one that does not arise 'out of the transaction or occurrence that is the subject matter of the opposing party's claim[,]'" it is a permissive counterclaim. *Gordon*, 2022 WL 4543845 at *6 (¶27) (quoting M.R.C.P. 13(b)). While it is true that the defending party may include permissive counterclaims in its filings, "[t]he purpose of Rule 13 is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuity of action and multiple litigation." M.R.C.P. 13, advisory committee notes. "If trying the permissive counterclaim in the same case as the original claim is tried will create confusion, prejudice, unnecessary delay or increased costs, the court has the discretion to order that the counterclaim be tried separately[.]" *Id*.

Tubwell did not vacate the property and surrender possession by the time his right to possession expired. Thus, Tubwell unlawfully deprived Plaintiffs of their right to immediate possession of the property. We affirm the circuit court's judgment as to each order.[8]

¶54.    **AFFIRMED.**

**GREENLEE AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., WESTBROOKS, McDONALD AND EMFINGER, JJ.,**

---

[8] Although we do not reach the remaining issues Tubwell raises due to the dispositive nature of the matters set forth, we acknowledge his argument that the trial court's ruling that he was required to pay for the full costs of the designation of the record made it financially challenging for him to seek review of the final judgment in this matter.

Yet generally speaking, it is "the appellant [who] is required to prepay the costs of preparing the record on appeal." *T. Jackson Lyons & Assocs. v. Precious T. Martin Sr. & Assocs.*, 87 So. 3d 444, 449 (¶14) (Miss. 2012). Previously set by statute, the Rules of Appellate Procedure now require that "[w]ithin seven (7) days after filing the notice of appeal, the appellant shall estimate the cost of preparation of the record on appeal, including, but not limited to, the cost of the preparation of the transcript, and shall deposit that sum with the clerk of the court whose judgment or order has been appealed." M.R.A.P. 11(b)(1).

In this case, Tubwell designated only a portion of the circuit court record; Plaintiffs then invoked their ability under the Rules to more fully designate other parts of the record. *See* M.R.A.P. 10(b)(4) ("If the appellee deems inclusion of other parts of the proceedings to be necessary, the appellee shall, within 14 days after the service of the designation and the statement of the appellant, file with the clerk and serve on the appellant and the court reporter a designation of additional parts to be included."). At that point, "[t]he clerk and reporter shall prepare the additional parts at the expense of the appellant unless the appellant obtains from the trial court an order requiring the appellee to pay the expense." *Id*.

Tubwell filed a motion for Plaintiffs to carry the expense of their counter-designation. Yet the circuit court found his partial designation of the record was "woefully deficient considering the issues that will be presented on appeal" and held that "the entirety of the record will be necessary for a complete understanding of the issues on appeal" and that Tubwell should bear the costs of the additional designation. Given the complexity of the procedural issues in this case and the assignments of error invoked by Tubwell himself, we find the circuit court's order was not an abuse of discretion.

**CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND EMFINGER, J.; WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN IN PART.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶55. I concur that the circuit court's judgment granting the Plaintiffs possession of the property should be affirmed. However, the circuit court erred by dismissing Tubwell's counterclaims without prejudice for lack of "jurisdiction." The circuit court dismissed Tubwell's counterclaims on the ground that a counterclaim for damages is not permitted in "summary unlawful detainer proceedings pursuant to Miss. Code Ann. § 11-25-101." The problem with the circuit court's ruling is that this is *not* an unlawful entry and detainer proceeding. The Plaintiffs commenced this action by filing a complaint for *ejectment* in circuit court. A counterclaim for damages is not prohibited in an ejectment action. Therefore, while Tubwell's counterclaims may fail for other reasons, we cannot affirm the dismissal on the false premise that this is a "summary unlawful [entry and] detainer proceeding[]." I would reverse the dismissal of the counterclaims and remand. Thus, I dissent in part.

¶56. This Court has explained that

> [a]n action for unlawful entry and detainer *must* be maintained in the justice court pursuant to Mississippi Code Annotated section 11-25-1 or in the county court pursuant to Mississippi Code Annotated section 11-25-101. However, Mississippi Code Annotated section 9-9-21 provides that the county court shall have *exclusive jurisdiction* over matters of unlawful entry and detainer. Therefore, an action for unlawful entry and detainer should be brought in justice court only when the county where the action is filed does not have a

27

county court.

*Gandy v. Citicorp*, 985 So. 2d 371, 373 (¶6) (Miss. Ct. App. 2008) (emphasis added) (citations partially omitted); *accord Harvey v. Fed. Nat'l Mortg. Ass'n*, 200 So. 3d 461, 465 n.2 (Miss. Ct. App. 2016); Miss. Att'y Gen. Op. No. 2005-00195, 2008 WL 2357946, *Mullen*, at *1 (May 2, 2008).

¶57.   DeSoto County has a county court.  Therefore, in DeSoto County, an unlawful entry and detainer action must be filed in county court.  The Plaintiffs filed this action in circuit court.

¶58.   The Plaintiffs properly filed this case in circuit court because they filed a "Complaint for *Ejectment*." (Emphasis added). "Circuit courts are competent to hear ejectment actions." *Hudson v. Bank of Edwards*, 469 So. 2d 1234, 1240 (Miss. 1985); *accord* Gee Ogletree, *Ejectment*, *in* 7 Encyclopedia of Mississippi Law § 60:115 (Jeffrey Jackson et al. eds., 2d ed. updated Oct. 2022) ("Ejection actions are typically brought in circuit or county court . . . ." (footnote omitted)).  The Plaintiffs' "Complaint for Ejectment" does not mention unlawful entry and detainer or cite any of the statutes related to unlawful entry and detainer.

¶59.   The Plaintiffs first mentioned unlawful entry and detainer in their memorandum in support of their motion to dismiss Tubwell's counterclaims. There, the Plaintiffs argued that Tubwell's counterclaims should be dismissed for two independent reasons: (1) unlawful entry and detainer actions are "summary" proceedings in which counterclaims are not permitted, and (2) Tubwell's counterclaims are barred by the prior federal judgment and the

28

parties' settlement agreement. The Plaintiffs mistakenly cited "Miss. Code Ann. § 11-75-101" as a statute governing unlawful entry and detainer cases. There is no such statute. The Plaintiffs presumably intended to cite Mississippi Code Annotated section 11-25-101 (Rev. 2019), which, as noted above, applies to unlawful entry and detainer cases in *county* court. The Plaintiffs also cited four unpublished *county* court decisions for the proposition that counterclaims are not permitted in unlawful entry and detainer proceedings.

¶60.    In his pro se response, Tubwell correctly stated that this "is not an unlawful entry and detainer case." He also stated that he had been "unable to locate" section 11-75-101. Tubwell argued that he was entitled to assert counterclaims under Rule 13 of the Mississippi Rules of Civil Procedure.

¶61.    The Plaintiffs may have realized their mistake at that point. The Plaintiffs filed a rebuttal memorandum in which they did not mention unlawful entry and detainer. Rather, they only argued that Tubwell's counterclaims were barred by the federal judgment and the parties' settlement agreement. In addition, during the subsequent hearing on the motion, Plaintiffs' counsel did not mention unlawful entry and detainer. Rather, counsel described this case as an "ejectment action" and argued that Tubwell's counterclaims were barred by the federal judgment and the parties' settlement agreement. For his part, Tubwell continued to argue that this ejectment action was not a "summary matter" but was subject to the Rules of Civil Procedure just like any other case.

¶62.    Nonetheless, the circuit court dismissed Tubwell's counterclaims without prejudice

29

for lack of "jurisdiction." The court reasoned that it was "without jurisdiction" over the counterclaims because of the "summary" nature of "unlawful detainer proceedings pursuant to Miss. Code Ann. § 11-25-101."

¶63.    On appeal, the Plaintiffs devote about one page of their brief to arguing that the circuit court correctly dismissed Tubwell's counterclaims without prejudice for lack of jurisdiction. The Plaintiffs do not reassert their prior argument that Tubwell's counterclaims are barred by the federal judgment and the parties' settlement agreement. For his part, Tubwell continues to argue that he was entitled to assert counterclaims because Rule 13 of the Mississippi Rules of Civil Procedure applies to an ejectment action filed in circuit court.

¶64.    It should be evident from the above discussion that this is an ejectment action, not an unlawful entry and detainer proceeding. Therefore, the circuit court erred by treating it as an unlawful entry and detainer proceeding and by dismissing Tubwell's counterclaims without prejudice for lack of "jurisdiction."[9]

¶65.    Under Rule 13, Tubwell was entitled to assert a counterclaim for damages against the Plaintiffs. *See* M.R.C.P. 13; *Hudson v. Bank of Edwards*, 495 So. 2d 1349, 1350-52 (Miss.

---

[9] Since this is not an unlawful entry and detainer proceeding, I do not attempt to address whether or to what extent counterclaims are permitted in such cases. However, I do note that a recent decision by the Mississippi Supreme Court seemed to assume or take for granted that both compulsory and permissive counterclaims, including counterclaims for compensatory and punitive damages, could be asserted in a statutory landlord/tenant eviction proceeding that was commenced in justice court and then appealed to circuit court. *See generally Gordon v. Dickerson*, No. 2020-CT-00601-SCT, 2022 WL 4543845 (Miss. Sept. 29, 2022), *reh'g denied* (Miss. Dec. 1, 2022).

1986) (holding that the defendant was entitled to file a counterclaim in response to a complaint for ejectment). Nothing in the Rules of Civil Procedure prohibits a counterclaim for damages in an ejectment action. Therefore, the circuit court erred by dismissing Tubwell's counterclaims for lack of jurisdiction.

¶66. The lead opinion agrees that it "was improper" for the circuit court to treat this as an unlawful entry and detainer case, but the lead opinion concludes that we should affirm for a different reason. *Ante* at ¶49 & n.5. The lead opinion states that not "*all* counterclaims are allowed" in ejectment actions but only those that are "within the confines of this limited proceeding for possession." *Ante* at ¶52. However, there is no basis in Mississippi law for this limitation. Rather, an ejectment action is governed by the Mississippi Rules of Civil Procedure, which broadly permit counterclaims. M.R.C.P. 13(a)-(c). "The purpose of Rule 13 is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuity of action and multiple litigation." M.R.C.P. 13 advisory committee notes. Under Rule 13, a defendant's right to assert "any claim" that he has against the plaintiff is not limited by the claims or subject matter of the original complaint. M.R.C.P. 13(b).

¶67. The lead opinion also cites *Wilson v. City of Greenville*, 359 So. 3d 648 (Miss. Ct. App. 2022), *ante* at ¶51, but *Wilson* does not support the dismissal of Tubwell's counterclaims either. *Wilson* involved two related cases that were consolidated on appeal.

*Id.* at 651 (¶1). In the first case, a former police chief attempted to appeal the city's acceptance of his resignation, but the circuit court dismissed the appeal for lack of jurisdiction because it was untimely. *Id.* at 651-52 (¶¶4-5). This Court affirmed the circuit's ruling on appeal. *Id.* at 654-55 (¶19). In the related case, the city filed a replevin action in circuit court to recover police department equipment still in the chief's possession. *Id.* at 652 (¶6). In response, the chief asserted a counterclaim that was "premised on his assertion that the [c]ity had no authority to [accept and] enforce [his] resignation." *Id.* The circuit court granted replevin to the city and dismissed the counterclaim, and this Court affirmed on appeal. *Id.* at 652, 659 (¶¶6, 36).

¶68. In *Wilson*, this Court was correct to affirm the dismissal of the police chief's counterclaim because it was an attempt to challenge his removal from office, and we had already held that the chief failed to timely appeal his removal. However, in the part of the opinion now cited by the lead opinion, this Court stated:

> Our supreme court has stated, "Replevin is a possessory action only, the gist of which is the right of possession in the plaintiff." *Ferris v. Hawkins*, 418 So. 2d 811, 814 (Miss. 1982) (quoting *Deposit Guar. Nat'l Bank v. Ellzey*, 222 So. 2d 680, 682 (Miss. 1969)). [Wilson's] counterclaim fell outside the limited purview of the replevin statute. We decline to apply the procedural rules on compulsory counterclaims to the statutory provision of replevin in this case. *See* M.R.C.P. 13(a)(1).[10] The circuit court correctly held that it would be

---

[10] Rule 13(a)(1) provides that a counterclaim is not compulsory if "at the time the action was commenced the claim was the subject of another pending action." The counterclaim in *Wilson* was already the subject of another pending action, so it was not compulsory. However, for the reasons explained in the text of this opinion, both compulsory and permissive counterclaims may be filed in replevin actions.

32

improper to entertain the counterclaim. *Id.*

*Id.* at 658 (¶32). To the extent that *Wilson* suggested that certain types of counterclaims are not allowed in replevin actions, it is in error. *Prior to the adoption of the Mississippi Rules of Civil Procedure*, counterclaims generally were not permitted in replevin actions. *Id.* at 656 (¶¶25-26). But that "is no longer true. Under the Mississippi Rules of Civil Procedure, a defendant may assert either a compulsory or a permissive counterclaim" in a replevin action. *Ross v. Stewart*, 227 So. 3d 406, 413 (¶26) (Miss. Ct. App. 2017) (Griffis, P.J., dissenting, joined by Barnes, Ishee, Fair, and Wilson, JJ.).[11]

¶69. Of course, this is not even a replevin case, so *Wilson* is not controlling. I address *Wilson* only because the lead opinion relies on it. This is an ejectment action in circuit court. Whether a counterclaim may be asserted in such a case is a procedural matter governed by the Rules of Civil Procedure. Nothing in the Rules prohibits counterclaims—whether compulsory or permissive—in an ejectment action. And Rule 13 generally permits defendants to assert counterclaims of all types, both compulsory and permissive. Therefore, I respectfully disagree that only counterclaims that are "within the confines of [a] limited

---

[11] There was no majority opinion in *Ross*. The lead opinion affirming the judgment of the trial court by an evenly divided Court was joined by four judges in full and one judge in part and in result. *Ross*, 227 So. 3d at 412 (¶22) (Westbrooks, J., joined by Lee, C.J., Irving, P.J., and Carlton, J., and joined in part and in result by Greenlee, J.). The lead opinion in *Ross* agreed with the dissent that "the trial judge initially erred by declining jurisdiction over the . . . counterclaim" asserted in that replevin action. *Id.* at (¶21). The lead opinion nonetheless affirmed because it concluded that "the trial judge later exercised jurisdiction over the . . . counterclaim" in substance. *Id.* The lead opinion further stated that in future cases, trial courts should allow counterclaims in replevin actions. *Id.*

33

proceeding for possession" may be asserted in an ejectment case. *Ante* at ¶52.

¶70.    The allegations of Tubwell's counterclaims are vague and conclusory. He seeks "appropriate damages" and demands a jury trial. If Tubwell's counterclaims even state a claim upon which relief may be granted, they may well be barred by the federal judgment or the parties' settlement agreement, as the Plaintiffs argued in the circuit court. However, we cannot affirm on that ground because the Plaintiffs have not made that argument on appeal.[12] Moreover, a dismissal on the ground that the counterclaims are barred by the federal judgment or the settlement agreement would be a dismissal *with* prejudice. We cannot render a dismissal with prejudice on appeal because the Plaintiffs did not cross-appeal the without-prejudice dismissal.[13] Therefore, I would reverse the dismissal of Tubwell's counterclaims and remand. On remand, the circuit court could consider whether the counterclaims are barred by the federal judgment or the parties' settlement agreement, or whether Tubwell even states a claim for relief.

¶71.    I am concerned that the lead opinion effectively amends Rule 13 and complicates the law in order to affirm the dismissal of seemingly meritless counterclaims. Moreover, since

---

[12] *See, e.g.*, *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018) ("[W]e decline to address an issue that has not been briefed on appeal. . . . Simply put, we will not act as an advocate for one party to an appeal." (quotation marks omitted)).

[13] *See, e.g.*, *Douglas v. Burley*, 134 So. 3d 692, 697 n.6 (Miss. 2012) ("[T]his Court has quoted with approval the following rule: 'while *a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal*, it is not necessary to urge an alternative ground for affirmance, even if the trial court considered and rejected that alternative ground.'" (emphasis added) (other brackets and quotation marks omitted) (quoting *Dunn v. Dunn*, 853 So. 2d 1150, 1152 (¶4) (Miss. 2003))).

the lead opinion simply affirms the counterclaims' dismissal *without prejudice*, Tubwell remains free to re-file them in a new action. It would be better to reverse and remand the case to allow the circuit court to resolve all claims between the parties in a single action, as the Rules of Civil Procedure permit and promote. *See* M.R.C.P. 13 advisory committee notes. Accordingly, I respectfully dissent.

**BARNES, C.J., AND EMFINGER, J., JOIN THIS OPINION. WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION IN PART.**